**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

_____

GEORGE THOMAS, GINGER FRANKS,
RANDY SMITH AND MICHELLE
SAMPSON, individually and on behalf of
all others similarly situated,

                                    JURY TRIAL DEMANDED

        *Plaintiffs*,

    v.

BIG HEART PET BRANDS
f/k/a DEL MONTE CORPORATION,                Case No.

        *Defendant.*

_____

**CLASS ACTION COMPLAINT**

    Plaintiffs, George Thomas, Ginger Franks, Randy Smith, and Michelle Sampson

("hereinafter Plaintiffs"), individually, and on behalf of all other similarly situated persons, by

and through their undersigned counsel, bring this Class Action Complaint against Defendant Big

Heart Pet Brands, f/k/a Del Monte Corporation, (hereinafter "Defendant").

**SUMMARY OF THE CASE**

    1.    Big Heart Pet Brands, f/k/a Del Monte Corporation, is a company that

manufactures, markets and labels pet food products named under the brand name Nature's

Recipe.  Defendant's marketing and labeling practices of Nature's Recipe claims to offer "all

natural" pet food products which are made from natural ingredients, thus void of synthetic and/or

artificial ingredients.

2.      Defendant manufactures a line of pet food products (hereinafter referred to as "Nature's Recipe") sold with a label that affirmatively misrepresents that true characteristics of the ingredients used by displaying the word "all natural" on its principal display panel. Defendant also affirmatively misrepresents the fact that its products do not contain "artificial preservatives."  In truth, Nature's Recipe contains synthetic and/or artificial chemical compounds including but not limited to mixed tocopherols, dicalcium phosphate, inositol, ferrous sulfate, copper sulfate, and sodium trypolyphosphate.

3.      Defendant knowingly and purposefully failed to disclose to its consumers that Nature's Recipe contains synthetic and/or artificial chemical compounds, making these products falsely labeled and not actually "all natural."  In fact, Defendant affirmatively states on its website, "our … recipes are crafted to help provide specific nutritional or functional benefits, **and they contain no artificial colors or preservatives.**"[1]   The Nature's Recipe products include, but are not limited to, the following:

- Nature's Recipe Pure Essentials Grain Free Large Breed Chicken & Sweet Potato Recipe

- Nature's Recipe Pure Essentials Grain Free Small Breed Chicken & Sweet Potato Recipe

- Nature's Recipe Pure Essentials Grain Free Senior Chicken & Sweet Potato

- Nature's Recipe Pure Essentials Grain Free Adult Chicken & Sweet Potato

4.      Defendant makes affirmative false statements on its product labels and website including but not limited to the following:

---

[1] http://www.naturesrecipe.com/benefits-and-ingredients/

- "We use nature's best.  Our dog food recipes are crafted to help provide specific nutritional or functional benefits, **and they contain no artificial colors or preservatives.**" [2]

- "**All Natural.**" [3]

- "Our **natural** recipe with added vitamins, minerals, and nutrients starts with real USA raised chicken as our #1 ingredient, and then adds a mouthwatering mix of garden quality vegetables and fresh picked fruits. Give your dog grain free goodness you can see, and nourish them with recipe combinations inspired by the best bounty from **nature**" (emphasis added). [4]

- "When **nature** gives us the best, pure essentials does the rest." [5]

5.      Defendant knowingly and purposefully failed to disclose to its consumers that the Nature's Recipe products are not actually "all natural."  To this day, Defendant has taken no meaningful steps to clear up consumers' misconceptions regarding its product.

6.      As a consequence of Defendant's unfair and deceptive practices, Plaintiffs, and members of the Class, purchased Nature's Recipe products under the false impression that, by purchasing Defendant's goods they would be receiving products that were in fact "all natural," or completely void of synthetic and/or artificial ingredients. Through their deceptive practices, Defendant sold its "all natural" products to thousands of consumers and received a substantial financial profit.

7.      Significantly, **each** consumer has been exposed to the **same** material misrepresentations and/or omissions, which are prominently displayed on the product packaging for Nature's Recipe products, and on Defendant's website, prior to purchasing the products.

---

[2] *Id.*
[3] http://naturesrecipe.com/pure-essentials/grain-free-dog-foods/
[4] http://naturesrecipe.com/pure-essentials/dry-dog-food/grain-free-adult-chicken-and-sweet-potato-recipe/
[5] http://www.naturesrecipe.com/

8.     Despite the fact that Nature's Recipe products contain synthetic and/or artificial chemical ingredients, the front labels of Defendant's Nature's Recipe products display the word "All Natural."  Despite the fact that Nature's Recipe products contain synthetic and/or artificial chemical ingredients Defendant's states on its website "our dog food recipes are crafted to help provide specific nutritional or functional benefits, and they contain no artificial colors or preservatives," and on its product labels "no artificial preservatives."

9.     Under Federal law, products such as Defendant's Nature's Recipe products are "misbranded" if their "labeling is false or misleading in any particular," or if they do not contain certain information on their labeling. *See* 21 U.S.C. § 343(a).

10.     Further, any violation of 21 U.S.C. § 343(a) also constitutes violations of Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty; Breach of Implied Warranties for Merchantability and Usage of Trade Pursuant to Fla. Stat. §672.314 (2014), Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314 (2014), Negligence and Unjust Enrichment. In this action, Plaintiffs assert claims under these state statutes, as well as under common law.

11.     For the reasons stated herein, Defendant's Nature's Recipe products sold in the United States are misbranded and illegal.

12.     Plaintiffs now seek to stop Defendant's unlawful conduct.

## PARTIES

13.     Plaintiffs, George Thomas, Ginger Franks, Sherrell Thomas, Todd Sanders, Randy Smith, and Michelle Sampson purchased Defendant's Nature's Recipe products in this

State and this District within the four years preceding the filing of this action (the "Class Period").

14.     In or about September 2014, Plaintiff George Thomas purchased Nature's Recipe Pure Essentials Grain Free Small Breed Chicken & Sweet Potato Recipe for dogs.  Plaintiff Thomas purchased an 11 lb. bag for approximately $33.99, at a PetSmart pet food store located within this district, relying specifically on the statement on the principal display panel which states "All Natural" and "no beef, corn, artificial preservatives or animal by-product meals."

15.     In or about November 2014, Plaintiff Ginger Franks purchased Nature's Recipe Pure Essentials Grain Free Large Breed Chicken & Sweet Potato Recipe for dogs. Plaintiff Franks purchased a 24 lbs. bag for approximately $59.99, at a Petco pet food store located within this district, relying specifically on the statement on the principal display panel which states "All Natural" and "no beef, corn, artificial preservatives or animal by-product meals."

16.     In or about August 2014, Plaintiff Randy Smith purchased Nature's Recipe Pure Essentials Grain Free Adult Chicken & Sweet Potato Recipe for dogs.  Plaintiff Smith purchased a 24 lbs. bag for approximately $49.99, at a Petco pet food store located within this district relying specifically on the statement on the principal display panel which states "All Natural" and "no beef, corn, artificial preservatives or animal by-product meals."

17.     In or about December 2014, Plaintiff Michelle Sampson purchased Nature's Recipe Pure Essentials Grain Free Senior Chicken & Sweet Potato Recipe for dogs. Plaintiff Sampson purchased a 24 lbs. bag for approximately $41.99 at a PetSmart pet food store located within this district relying specifically on the statement on the principal display panel which states "All Natural" and "no beef, corn, artificial preservatives or animal by-product meals."

18.     Plaintiffs are and, throughout the entire class period asserted herein, have been very concerned about, and try to avoid, purchasing foods for their pets that are not all natural—such as foods that contain NO synthetic and/or artificial chemical ingredients. For this reason, Plaintiffs were willing to pay a premium price for pet foods that were marketed and labeled "all natural."  Based on the "all natural" and "no artificial preservatives" representations on Defendant's Nature's Recipe products' labels, Plaintiffs and members of the Class reasonably believed the products they purchased were "all natural" and contained "no artificial preservatives" and relied on these representations in making the purchases as described herein.

19.     Not only did Plaintiffs purchase the Nature's Recipe products because the labels said they were "all natural," Plaintiffs also paid more money for the products than they would have paid for other similar products that contained synthetic and/or artificial ingredients.

20.     Had Plaintiffs known the truth—that the Nature's Recipe products were not "all natural"— they would not have purchased these products, and would not have paid the premium price for these products.

21.     Defendant, Big Heart Pet Brands is a corporation incorporated in the State of Delaware, with its principal place of business located at One Maritime Plaza, Suite 2500, San Francisco, California 94111.  Defendant's registered agent and address in Florida is CT CORPORATION SYSTEM, 1200 S. PINE ISLAND RD., PLANTATION, FL 33324.

22.     Defendant is a corporation that produces, advertises, markets, sells and distributes their products throughout the United States, including in this State, District, and Division.

## JURISDICTION AND VENUE

23.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs; (2) a member of the class of Plaintiffs are citizens of a State different from the Defendant; and (3) the number of members of all proposed Plaintiff classes in the aggregate is greater than 100.

24.     This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoings alleged herein occurred in Florida. Defendant also has sufficient minimum contacts with Florida, and has otherwise intentionally availed itself to the markets in Florida through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the events or omissions giving rise to the claim occurred within this District, Defendant caused harm to Plaintiffs in this District,  and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS RELEVANT TO ALL CLAIMS

### *Definition of "all natural"*

26.     Representing that a food product or ingredient is "all natural" and contains "no artificial preservatives" are statements of fact, and these terms have been defined by the federal governmental agencies that regulate food companies such as the Defendant.

27.     Although the Food and Drug Administration (FDA) does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is not natural if it contains color, artificial ingredients or flavors, or synthetic substances. Specifically, the FDA states: "the agency will maintain its policy regarding the use of 'natural,' as meaning nothing artificial or synthetic (including all color

additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).

28.    Pursuant to 7 C.F.R. § 205.2, an ingredient is synthetic and/or artificial if it is:

*Synthetic*. A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

*Nonsynthetic (natural)*. A substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. 6502(21)). For the purposes of this part, nonsynthetic is used as a synonym for natural as the term is used in the Act.

29.    Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defined a natural product as, "a product that does not contain any artificial or synthetic and/or artificial ingredients and does not contain any ingredient that is more than "minimally processed":

Minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices. Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing…

*See* USDA FSIS, Food Standards and Labeling Policy Book, available at

www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf.

30.    In addition, in an FDA letter to Judges Yvonne Gonzalez Rogers, Jeffrey S. White, and Kevin McNulty, regarding the judges' request for the agency to make a determination about whether and under what circumstances food products containing ingredients produced using certain synthetic and/or artificial ingredients may be labeled "natural," the FDA writes:

FDA has not promulgated a formal definition of the term "all natural" with respect to foods. The agency has, however, stated that its policy regarding the use of the term "all natural" on food labeling means that "nothing artificial or

synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to bin tin the food."

*See* 58 Fed. Reg. 2302, 2407 (1993).

31.     Many pet foods are labeled as "premium," and some now are "super premium" and even "ultra premium." Other products are touted as "gourmet" items. Products labeled as premium or gourmet are not required to contain any different or higher quality ingredients, nor are they held up to any higher nutritional standards than are any other complete and balanced products.  AAFCO has developed a feed term definition for what types of ingredients can be considered "all natural" and "Guidelines for Natural Claims" for pet foods.  For the most part, "all natural" can be construed as equivalent to a lack of artificial flavors, artificial colors, or artificial preservatives in the product. Artificial colors are not necessary, except to please the pet owner's eye. If used, they must be from approved sources, the same as for human foods.[6]

32.     A reasonable consumer's understanding of the term "all natural" comports with these federal definitions.

33.     A reasonable consumer would also expect that Defendant's products are what Defendant identifies them to be on its labels (i.e. that they are "all natural" and do not contain "artificial preservatives" and thus are void of synthetic and/or artificial ingredients).

***The Products' Synthetic and/or artificial Ingredients***

34.     **Tocopherols are not "all natural" preservatives.** Tocopherols are a family of Vitamin E compounds which, typically, are found in leafy green vegetables, vegetable oils, fish and nuts. Tocopherols are commercially manufactured and mass produced in an attempt to utilize them as preservatives that extend the shelf life of products. Since there is usually a long span of

---

[6] http://www.fda.gov/AnimalVeterinary/ResourcesforYou/ucm047113.htm

time between the product's production and the time of purchase, commercial foodstuffs are typically loaded with preservatives, such as tocopherols, to allow them to remain as fresh as possible for as long as possible. Although said preservatives are fairly effective in extending the longevity of the products, they are still extremely unhealthy. Many cause and/or promote skin problems while others have been reported to cause cancer. According to a study on the use of preservatives to extend the shelf life of products, there is no such thing as a natural preservative, "natural substances that show antimicrobial activity are either not adequate for broad spectrum protection or they have undesirable qualities."[7] Furthermore, taking synthetic and/or artificial vitamin E (tocopherols) can increase the risk of prostate cancer by 17%. Additionally, in a Fact Sheet on Vitamin E, the U.S Department of Health & Human Services writes that, "HOPE-TOO [a follow up to clinical trial HOPE] found that Vitamin E provided no significant protection against heart attacks, strokes, unstable angina, or death from cardiovascular disease or other causes after 7 years of treatment." The fact sheet then goes on to specify that, "Participants taking Vitamin E, however, were 13% more likely to experience, and 21% more likely to be hospitalized for, heart failure, a statistically significant…finding." The participants in the clinical trials were given **natural** Vitamin E and still, "experienced no fewer cardiovascular events or hospitalizations for heart failure or chest pain than participants taking a placebo." Therefore, no argument can be made for the benefits of synthetic Vitamin E – such as those in question in this complaint – since, according to the same study, synthetically produced tocopherols are only half as effective as the same amount of the natural form, and the natural forms are proven ineffective.[8]

---

[7] https://www.fromnaturewithlove.com/library/preservatives.asp
[8] http://ods.od.nih.gov/factsheets/VitaminE-HealthProfessional/

35.     **Dicalcium Phosphate.** Dicalcium phosphate is a calcium supplement commonly found in pharmaceuticals as an inert ingredient to bind tablets. According to MedlinePlus, a service of the U.S. National Library of Medicine, "phosphate salts containing sodium, potassium, aluminum, or calcium seem to be safe for most people when used **occasionally.**" The study goes on to state, "regular long-term use can upset the balance of phosphates and other chemicals in the body and should be monitored by a healthcare professional to avoid serious side effects. Phosphate salts can irritate the digestive tract and cause stomach upset, diarrhea, constipation and other problems." [9] Furthermore, according to a medical publication by the U.S. National Library of Medicine's National Institute of Health, "potentially harmful phosphate-based products derived from the wet acid digestion of phosphate rock represent one of the most serious problems facing the phosphate industry. This is particularly true for dicalcium phosphate (DCP)." Furthermore, the publication defines DCP as, "a food additive produced from either **sulphuric acid** or **hydrochloric acid** digestion of raw rock material."[10] Additionally, the FDA names dicalcium phosphate dihydrate as a **drug** per 21 CFR 310.545.[11]

36.     **Inositol.** Inositol, or cyclohexane-1,2,3,4,5,6-hecol is a **chemical compound** that is **synthesized** from glucose-6-phosphate. (G-6-P is first isomerized by an inositol-3-pjosphate synthase enzyme then dephosphorylated by an inositol monophosphate enzyme). Today, inositol nitrate is used to gelatinize nitrocellulose and may be found in many modern explosives and solid rocket propellants. Inositol can be made in a lab, and often is for commercial purposes. Inositol is known to treat depression, and bipolar disorders but should not be administered to domestic animals unless under the supervision of a veterinarian. Furthermore, according to an

---

[9] http://www.nlm.nih.gov/medlineplus/druginfo/natural/735.html
[10] http://www.ncbi.nlm.nih.gov/pubmed/19515484
[11] http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=310.545

study on inositol's presence in dog foods, "because dogs can produce this internally by breaking down sugars, their bodies do not need to rely on dietary intake to provide daily requirements." Furthermore, the study states, "inositol is not considered an essential dietary vitamin."[12] In addition, a study performed by the New York University Langone Medical Center found that even in humans, "there is evidence to suggest inositol may trigger manic episodes in people with this condition [bipolar disorder]."[13] Furthermore, in a formal recommendation by the National Organic Standards Board (NOSB) to the National Organic Program (NOP), the NOSB recommends, "inositol…[is] synthetic." This motion to recognize inositol as synthetic received fifteen (15) votes in favor and zero (0) votes against. Furthermore, the NOSB writes, "consistent with OFPA and NOP policies, this petitioned substance was determined to be synthetic and only approved for infant formula as mandated by the FDA." Furthermore, the NOSB notes that, "commercial production of inositol is often obtained from hydrolysis and acidification that begins from the corn/rice steeping process by using the phytic acid extracted from the corn/rice, and then using this phytic acid in one of several different chemical processes that ultimately results in isolating inositol." Moreover, the NOSB goes on to mention that, "additional methods also include utilization of microbial byproducts and processes…; however these reactions are also dependent on synthetic reactions, or reactions that would not normally occur in nature to produce the final product of isolated inositol." The NOSB concludes, "the methods by which we can obtain commercial quantities of inositol are synthetic."[14]

37. **Sodium Tripolyphosphate.** Sodium tripolyphosphate, or STPP for short, is a chemical that has a wide range of industry uses, from an ingredient in cleaning products to a food

---

[12] http://slimdoggy.com/what-is-inositol-and-why-is-it-in-dog-food/
[13] http://www.med.nyu.edu/content?ChunkIID=21766#P5
[14] http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5098917

preservative. Structurally, STTP is made up of five sodium atoms, three phosphorus atoms, and ten oxygen atoms. Approximately two million tons are produced annually by heating a stoichiometric mixture of disodium phosphate and monosodium phosphate, under carefully controlled conditions. According to a summary on STPP by the U.S. National Library of Medicine, STPP is, "prepared by molecular dehydration of mono- & disodium phosphates." Furthermore, the summary goes on to state that the chemical may also be made through, "controlled calcination of sodium orthophosphate mixture from sodium carbonate & phosphoric acid." Additionally, the summary reveals that STPP is primarily used in products such as, "home laundry detergent builder, 45%; industrial and institutional detergents, 24%; dish washing detergents, 16%." The summary also notes that exposure to STPP may cause pain and redness of the skin, coughing, sore throat, and pain and redness of the eyes.[15] Furthermore, according to the Food & Water Watch organization, "STTP is a suspected neurotoxin, as well as a registered pesticide and known air contaminant."[16] Furthermore, while the FDA recognizes STPP as generally safe for human consumption, the agency also recognizes that sodium phosphates are synthetic and has placed them as such on the National List of Allowed and Prohibited Substances.

38.    **Ferrous Sulfate.** Ferrous Sulfate is a type of iron added to dog food to boost iron content. Besides being commercially produced through chemical means such as the oxidation of pyrite, iron is the most abundant trace mineral in a dog's body and, consequently, not a necessary supplement. Furthermore, consuming too much iron may be toxic. According to the ASPCA, iron toxicity is a very common problem among animals. In a toxicology brief by Jay Alberetson, DVM, PhD, DABT, DABVT, of the ASPCA, "one reason iron toxicosis is such an important

---

[15] http://pubchem.ncbi.nlm.nih.gov/compound/Sodium_tripolyphosphate#section=Toxicity-Summary
[16] http://www.foodandwaterwatch.org/blogs/what-is-sodium-tripolyphosphate-doing-in-your-fish/

problem is that the general public is often unaware of the potential toxicity of products that are considered natural." Furthermore, since iron is already present – in high amounts – in dogs' bodies, more of it from outside sources may lead to increase chances of iron poisoning since, "toxicity depends on the amount of iron already in the body." The brief goes on to note that, "some animals develop clinical signs of toxicosis even when they receive doses that cause no problems in other animals."[17] Common side effects of an excess of iron in animals are vomiting, diarrhea, depression, gastrointestinal hemorrhage and abdominal pain, among others. According to the U.S Department of Health & Human Services, "acute intakes of…iron…can lead to gastric upset, constipation, nausea, abdominal pain, vomiting, and faintness."  Furthermore, they note, "between 1983 and 2000, at least 43 U.S. children died from ingesting supplements containing high doses of iron…Accidental ingestion of iron supplements cause about a  third of poising deaths among children reported in the United States between 1983 and 1991."[18]

39.     **Copper Sulfate.** Copper sulfate is an inorganic compound that combines sulfur with copper. The toxicity of copper sulfate depends on the copper content. Copper sulfate has been registered for use in pesticide products in the United States since 1956. Furthermore, it is produced industrially by treating copper metal with hot concentrated sulfuric acid. According to a study on the toxicity of copper sulfate by Cornell University, "symptoms are severe…if copper sulfate is retained in the stomach." The study goes on to state that some side effects include burning pain in the chest and abdomen, intense nausea, vomiting, diarrhea, headache, sweating, shock, discontinued urination, injury to the brain, liver, kidneys, stomach and intestinal linings. Furthermore, the study notes that, "copper sulfate can be corrosive to the skin and eyes. It is readily absorbed through the skin and can produce a burning pain, along with the same severe

---

[17] http://www.aspcapro.org/sites/pro/files/zn-vetm0206_082-090.pdf
[18] http://ods.od.nih.gov/factsheets/Iron-HealthProfessional/

symptoms of poising from ingestion."[19] Further, the FDA defines Copper Sulfate as usually

being used in "the pentahydrate form. This form occurs as large, deep blue or ultramarine,

triclinic crystal; as blue granules, or as a light blue powder. The ingredient is prepared by the

**reaction** of **sulfuric acid** with **cupric oxide** or with **copper metal**."[20] Additionally, in a

Compound Summary of copper sulfate with the U.S. National Library of Medicine, the

compound is manufactured by a, "reaction of scrap or shot copper with dilute sulfuric acid and

air." Furthermore, it is a, "byproduct of copper electrolysis and etching process product is

generally only suitable for agricultural purposes." Copper sulfate may also cause pain and

redness of the skin, coughs, sore throat, blurred vision, abdominal pain, burning sensation,

nausea, vomiting, and diarrhea, among other things. The summary goes on to state that, "the

substance is severely irritating to the eye and skin… [is] corrosive on ingestion. Ingestion could

cause effects on the blood, kidneys and liver."[21]

       40.     While Defendant labels its Nature's Recipe products "all natural," the ingredients

in Defendant's product, including, but not limited to the ingredients discussed above, are

synthetic and/or artificial compounds.  Further, there are warnings that the excessive use of the

aforementioned ingredients can lead to: anal irritation, burning sensation, diarrhea, gas, nausea,

and stomach cramps, among other side effects, in animals.

       41.     While Defendant's "all natural" food labels did disclose that they contain these

ingredients, those labels did not disclose that these ingredients are synthetic and/or artificial. This

is a significant and material omission given Defendant's "all natural" representation on the food

---

[19] http://pmep.cce.cornell.edu/profiles/extoxnet/carbaryl-dicrotophos/copper-sulfate-ext.html
[20] http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?fr=184.1261
[21] http://pubchem.ncbi.nlm.nih.gov/compound/Copper_sulfate#section=Toxicity

product labels. Based on said representation, one would normally expect that none of the ingredients in Defendant's food products would be synthetic and/or artificial or artificial.

42.    According to the product labels, Defendant's food products contain the following recognized synthetic and/or artificial ingredients:

- <u>Nature's Recipe Pure Essentials Grain Free Large Breed Chicken & Sweet Potato Recipe</u> contains known synthetic ingredients such as mixed tocopherols, dicalcium phosphate, inositol, ferrous sulfate, copper sulfate;

- <u>Nature's Recipe Pure Essentials Grain Free Small Breed Chicken & Sweet Potato Recipe</u> contains known synthetic ingredients such as mixed tocopherols, inositol, ferrous sulfate, copper sulfate, and sodium tripolyphosphate;

- <u>Nature's Recipe Pure Essentials Grain Free Senior Chicken & Sweet Potato</u> contains known synthetic ingredients such as tocopherols, inositol, ferrous sulfate, copper sulfate, and sodium tripolyphosphate; and

- <u>Nature's Recipe Pure Essentials Grain Free Adult Chicken & Sweet Potato</u> contains known synthetic ingredients such as tocopherols, inositol, ferrous sulfate, copper sulfate, and sodium tripolyphosphate.

*See* 7 C.F.R. 205.105; 7 C.F.R. 205.601; 7 C.F.R. 205.603; 7 C.F.R. 205.605

43.    The labeling of products as "all natural," carries implicit health benefits that are highly important to consumers, when it comes to their pet's diet—benefits for which consumers are willing to pay a premium price over comparable products that are not natural. Over the past several years, Defendant has cultivated and reinforced a corporate image that has catered to this "all natural" theme and has boldly placed this claim on each and every one of its products, despite the fact that Defendant uses synthetic and/or artificial ingredients in the products identified above.

44.    Defendant has used the term "all natural" to shape its brand and sell its pet foods. Yet, the existence of synthetic and/or artificial ingredients in its pet food renders the use of the label "all natural" false and misleading. In manufacturing it products, Defendant had a choice

between using natural or synthetic and/or artificial ingredients. It purposefully chose to use synthetic and/or artificial ingredients, but nonetheless labeled its food products as "all natural."

***Nature's Recipe's Products are Misbranded and Illegal***

45.     All containers of Nature's Recipe products sold in the United States are misbranded, falsely labeled, and as such are illegal.

46.     Their sale constitutes violations of the FDCA, Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty pursuant to Fla. Stat. §672.313 (2014),; Breach of Implied Warranties for Merchantability and Usage of Trade pursuant to Fla. Stat. §672.314 (2014), Negligence and Unjust Enrichment.

47.     With the nutritional and health benefits of "all natural" foods becoming widely known, consumer demand for these products has increased rapidly, expanding to all aspects of life, including what consumers choose to feed their pets. It was this enormous new market that Defendant hoped to tap with the sale of its Nature's Recipe products.

48.     Defendant knowingly and intentionally sold these misbranded and falsely labeled products to consumers (including Plaintiffs) with the intent to deceive them.

49.     Plaintiffs purchased Nature's Recipe products within the Class Period.

50.     Despite the prevalence of synthetic and/or artificial ingredients in the Subject Products, the front labels of the Nature's Recipe products display the words "all natural" and "no artificial preservatives."

51.     Nature's Recipe products mislead consumers into believing the products consist of only "all natural" ingredients and "no artificial preservatives," when they in fact contain the synthetic and/or artificial chemical ingredients.

52.     Had Plaintiffs known that Nature's Recipe products were not "all natural," Plaintiffs would not have purchased these Nature's Recipe products.

53.     Had Plaintiffs known that Nature's Recipe products were illegally sold products, Plaintiffs would not have purchased Nature's Recipe products.

54.     Plaintiffs' reliance was reasonable.  A reasonable consumer would have been misled by Defendant's actions.

55.     With respect to Nature's Recipe products, Defendant has violated several provisions of the FDCA and regulations promulgated thereunder as discussed herein.  The current FDCA regulations are applicable to pet foods.  Specifically,  21 U.S.C. 321(f) provides "the term 'food' means (1) articles used for food or drink for man or other animals."

56.     Defendant has violated 21 U.S.C. 331(a).  Specifically, 21 U.S.C. 331(a) provides that it is unlawful to introduce or deliver for introduction into interstate commerce any food, drug, device, tobacco product, or cosmetic that is adulterated or **misbranded**.

57.     Defendant has violated 21 U.S.C. 331(b).  Specifically, 21 U.S.C. 331(b) provides that the act of adulteration or **misbranding** of any food, drug, device, tobacco product, or cosmetic in interstate commerce is prohibited.

58.     Defendant has violated 21 U.S.C. 331(c).  Specifically, 21 U.S.C. prohibits the receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or **misbranded**, and the delivery or proffered delivery thereof for pay.

59.     Defendant has violated 21 U.S.C. 331(g).  Specifically, 21 U.S.C. 331(g) provides that it is unlawful to manufacture within any territory any food, drug, device, tobacco product, or cosmetic that is adulterated or **misbranded**.

60.     The FDCA generally prohibits misleading labeling. *See* 21 U.S.C. § 343(a) ("A food shall be deemed to be **misbranded**" if "its labeling is false or misleading in any particular."). Furthermore, although the FDA has not issued a regulation defining the word natural, it has articulated a "policy," defining natural to mean, "that nothing artificial or synthetic and/or artificial…has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); *see also* FDA Warning Letter to Alexia Foods, Inc. (Nov.16, 2011), http://www.fda.gov/ICECI.Enforcementactions/WarningLetters/ecm281118.htm (describing SAPP as "a synthetic and/or artificial chemical preservative," and stating that the term "all natural" on a food product containing SAPP "is false and misleading").

61.     Defendant misled customers by labeling pet food products as "all natural" when the products contain synthetic and/or artificial chemical preservative, thus Defendant's conduct violates the FDCA.

62.     It is plausible that a reasonable consumer, such as Plaintiffs and members of the Class, could interpret the words "all natural" to exclude synthetic and/or artificial compounds such as tocopherols, ferrous sulfate, and copper sulfate, among others, and therefore be misled by Defendant's labeling.  *See, e.g., Vicuna v. Alexia Foods, Inc.,* No. 11-6119 (PJH), 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (holding that "whether a reasonable consumer" of a product that  contains SAPP "would likely be deceived by the designation 'All Natural' is a factual dispute" that cannot be resolved at the motion to dismiss stage); *see also Janney v. Mills,* No. 12-cv-03919 (WHO), 2014 WL 1266299, at *3 (N.D. Cal. Mar. 26, 3014) (collecting cases in which "[c]ourts have found similar claims challenging the terms 'all natural' and 'natural' to be sufficient basis for a cause of action under California's consumer protection laws"); *Morales v. Unilever*

*U.S., Inc.,* No. 13-cv-2213 (WBS), 2014 WL 1389613, at *7 (E.D. Cal. Apr. 9, 2014) (explaining that "the relevant question" in a deceptive labeling case "is the meaning that consumers would attach to the term" at issue and that "this is generally not a question that can be resolved on a motion to dismiss"); *Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) ("[P]laintiffs allege that they were deceived by the labeling of defendant's drink products as 'All Natural' because they did not believe that the product would contain [high fructose corn syrup]…[P]laintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's labeling.")

***Defendant's Strategy to Appeal to Health-Conscious Consumers***

63.     Defendant engaged in this fraudulent advertising and marketing scheme because it knew that its target market is willing to pay more for "all natural" dog food products than for conventional dog food products. This is due to the association consumers make between "all natural" pet food products and a wholesome way of life for pets, the perceived higher quality, health and safety benefits of the products, and/or low impact on the environment.

64.     As such, Defendant's "all natural" labeling is central to its marketing of the products and part of its overall strategy to capture the rapidly expanding natural foods market. As a result, Defendant commands a premium price for the products; using "all natural" claims to distinguish them from its competitors' food products.

65.     As Defendant is reasonably aware, many American consumers are health-conscious and seek out wholesome natural foods to ensure their pets keep a healthy diet. Because of this, consumers routinely take nutrition information into consideration in selecting and purchasing dog food items.

66.     Consumers also value "all natural" ingredients for countless other reasons, including perceived benefits of avoiding disease, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and/or artificial and hazardous substances, and financially supporting the companies that share these values.

67.     Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers, which they can and do use to make purchasing decisions. As noted by food and Drug Administration Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

68.     The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions.  The results of a recent FDA Food Labeling and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

69.     Consumers attribute a wide range of benefits to foods made entirely of natural ingredients.  Consumers perceive "all natural" foods to be higher quality, healthier, safer to eat, and less damaging to the environment.

70.     Catering to consumers' taste for natural foods is tremendously advantageous for business.  In 2008, foods labeled with the word "all natural" produced $22.3 billion in sales, a 10% increase from 2007, and a 37% increase from 2004.  In 2009, sales jumped again by 4%.

71.     It was in an effort to capture the growing demand and to entice consumers to purchase its products that Defendant committed the unlawful acts detailed in this Complaint.

72.     Consumers lack the ability to test or independently ascertain the accuracy of a food product label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a food product's ingredients.

73.     Moreover, not having the specialized food chemistry and regulatory knowledge necessary to make independent determinations thereof, a reasonable consumer would interpret the fine-print ingredient label in a way to be consistent with the front label representation.

74.     Food product companies intend for consumers to rely upon their products' labels, and reasonable consumers do, in fact, so rely.  Those labels are the only available source of information consumers can use to make decisions on whether to buy "all natural" food products.

75.     As a result of its false and misleading labeling, Defendant was able to sell its Products to thousands, if not hundreds of thousands of consumers, throughout the United States, and Florida, and to profit handsomely from these transactions.

***Defendant's Knowledge of the Falsity of its Advertising***

76.     Defendant had knowledge of the representations that were made regarding the Nature's Recipe products, insofar as all of those representations appeared on the Nature's Recipe products' packages.

77.     Defendant also knew what ingredients were added to each product, as (presumably) all product ingredients are listed on the product packages and all of the Nature's Recipe products' ingredients are further disseminated on Defendant's website.

78.     Defendant is governed by and has knowledge of the federal regulations that control the labeling of its food products and, thus, was aware that some of the ingredients have

22

been federally declared as synthetic and/or artificial substances and/or require extensive

processing to be safely used as a food ingredients.  Defendant has retained expert nutritionists,

food chemists, and other scientists, and has spent much time and money in developing its own

food technologies, such that it was aware that the synthetic and/or artificial substances used in its

products are not natural.

79.     As such, Defendant had knowledge of all facts demonstrating that its "all natural"

Nature's Recipe products contain synthetic and/or artificial substances and that the products were

falsely labeled.

80.     The misrepresentations and omissions were uniform and were communicated to

Plaintiffs, and to each member of each class, at the point of purchase and consumption.

***Purchasers of Misbranded Nature's Recipe Products Have Been Injured***

81.     Plaintiffs read and reasonably relied on the labels as described herein when

buying Nature's Recipe products.  The principal display alleging Nature's Recipe products are

"all natural," and contain "no artificial preservatives" appears as follows (for every single

product alleged herein):



**Ingredients**
Chicken, Chicken Meal (Natural Source Of Glucosamine and Chondroitin Sulfate), Potatoes, Sweet Potatoes, Potato Protein, Pea Protein, Peas, Chicken Fat (Preserved With Mixed Tocopherols), Apples, Tapioca Starch, Natural Flavor, Dried Cranberries (Cranberries, Sugar), Dicalcium Phosphate, Salt, Flaxseed, Carrots, Potassium Chloride, Vitamins (Vitamin E Supplement, L-Ascorbyl-2-Polyphosphate (Source Of Vitamin C), Inositol, Niacin Supplement, Vitamin A Supplement, d-Calcium Pantothenate, Thiamine Mononitrate, Beta-Carotene, Riboflavin Supplement, Pyridoxine Hydrochloride, Menadione Sodium Bisulfite Complex, Vitamin D3 Supplement, Folic Acid, Biotin, Vitamin B12 Supplement), Minerals (Zinc Proteinate, Ferrous Sulfate, Zinc Oxide, Iron Proteinate, Copper Sulfate, Copper Proteinate, Manganese Proteinate, Manganous Oxide, Calcium Iodate, Sodium Selenite), Choline Chloride, Lactic Acid, Citric Acid (Used As A Preservative), L-Carnitine, Yucca Schidigera Extract, Rosemary Extract.



**Ingredients**

Chicken, Chicken Meal, Potatoes, Peas, Sweet Potatoes, Pea Protein, Chicken Fat (Preserved With Mixed Tocopherols), Pea Fiber, Apples, Tapioca Starch, Natural Flavor, Dried Cranberries (Cranberries, Sugar), Tomato Pomace, Salt, Flaxseed, Canola Oil (Preserved With Mixed Tocopherols), Sodium Tripolyphosphate, Carrots, Potassium Chloride, Vitamins (Vitamin E Supplement, L-Ascorbyl-2-Polyphosphate (Source of Vitamin C), Inositol, Niacin Supplement, Vitamin A Supplement, d-Calcium Pantothenate, Thiamine Mononitrate, Beta-Carotene, Riboflavin Supplement, Pyridoxine Hydrochloride, Menadione Sodium Bisulfite Complex, Vitamin D3 Supplement, Folic Acid, Biotin, Vitamin B12 Supplement), Minerals (Zinc Proteinate, Ferrous Sulfate, Zinc Oxide, Iron Proteinate, Copper Sulfate, Copper Proteinate, Manganese Proteinate, Manganous Oxide, Calcium Iodate, Sodium Selenite), Choline Chloride, Lactic Acid, Citric Acid (Used As A Preservative), L-Carnitine, Yucca Schidigera Extract, Rosemary Extract.



**Ingredients**

Chicken, Chicken Meal (Natural Source Of Glucosamine And Chondroitin Sulfate), Potatoes, Sweet Potatoes, Peas, Pea Fiber, Apples, Pea Protein, Chicken Fat (Preserved With Mixed Tocopherols), Tapioca Starch, Natural Flavors, Dried Cranberries (Cranberries, Sugar), Tomato Pomace, Dicalcium Phosphate, Salt, Flaxseed, Carrots, Potassium Chloride, Vitamins (Vitamin E Supplement, L-Ascorbyl-2-Polyphosphate (Source Of Vitamin C), Inositol, Niacin Supplement, Vitamin A Supplement, d-Calcium Pantothenate, Thiamine Mononitrate, Beta-Carotene, Riboflavin Supplement, Pyridoxine Hydrochloride, Menadione Sodium Bisulfite Complex, Vitamin D3 Supplement, Folic Acid, Biotin, Vitamin B12 Supplement), Minerals (Zinc Proteinate, Ferrous Sulfate, Zinc Oxide, Iron Proteinate, Copper Sulfate, Copper Proteinate, Manganese Proteinate, Manganous Oxide, Calcium Iodate, Sodium Selenite), Choline Chloride,Lactic Acid, Citric Acid (Used As A Preservative), L-Carnitine, Yucca Schidigera Extract, Rosemary Extract.



**Ingredients**

Chicken, Chicken Meal, Potatoes, Peas, Sweet Potatoes, Chicken Fat (Preserved With Mixed Tocopherols), Apples, Pea Protein, Tomato Pomace, Tapioca Starch, Natural Flavors, Dried Cranberries (Cranberries, Sugar), Salt, Flaxseed, Dicalcium Phosphate, Carrots, Potassium Chloride, Vitamins (Vitamin E Supplement, L-Ascorbyl-2-Polyphosphate (Source Of Vitamin C), Inositol, Niacin Supplement, Vitamin A Supplement, d-Calcium Pantothenate, Thiamine Mononitrate, Beta-Carotene, Riboflavin Supplement, Pyridoxine Hydrochloride, Menadione Sodium Bisulfite Complex, Vitamin D3 Supplement, Folic Acid, Biotin, Vitamin B12 Supplement), Minerals (Zinc Proteinate, Ferrous Sulfate, Zinc Oxide, Iron Proteinate, Copper Sulfate, Copper Proteinate, Manganese Proteinate, Manganous Oxide, Calcium Iodate, Sodium Selenite), Choline Chloride, Lactic Acid, Citric Acid (Used As A Preservative), L-Carnitine, Yucca Schidigera Extract, Rosemary Extract.

81.     Plaintiffs relied on Defendant's labeling, and based and justified the decision to purchase Nature's Recipe products in substantial part, on these labels.

82.     At point of sale, Plaintiffs did not know, and had no reason to know, that Nature's Recipe products contained synthetic and/or artificial chemical ingredients.

83.   At point of sale, Plaintiffs did not know, and had no reason to know, that Nature's Recipe products were unlawful and misbranded.

84.   Had Plaintiffs been aware of these material facts, they would not have bought Nature's Recipe products.

85.   As a result of Defendant's unlawful misrepresentations, Plaintiffs and thousands of others in Florida and throughout the United States purchased Nature's Recipe products.

86.   Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the Nature's Recipe products.

87.   Defendant's misrepresentations are part of its systematic labeling practice.

88.   A reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase Nature's Recipe products.

89.   Plaintiffs' purchase of Nature's Recipe products damaged them.

90.   Such purchases damaged Plaintiffs because, *inter alia*, misbranded products are illegal and have no economic value.

91.   Such purchases damaged Plaintiffs because, *inter alia,* Plaintiffs had cheaper alternatives available and paid an unwarranted premium for Nature's Recipe products.

92.   All purchasers of Nature's Recipe products were injured.

## CLASS ACTION ALLEGATIONS

93.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in Florida who, within the Class Period, purchased Nature's Recipe Pure Essentials Grain Free Large Breed Chicken & Sweet Potato Recipe; Nature's Recipe Pure Essentials Grain Free Small Breed Chicken & Sweet Potato Recipe; Nature's Recipe Pure Essentials Grain Free Senior Chicken & Sweet Potato; and Nature's Recipe Pure Essentials Grain Free Adult Chicken & Sweet Potato.

28

94.     The following persons are expressly excluded from the Class: (1)
Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election
to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to
which this case is assigned and its staff.

95.     This action can be maintained as a class action because there is a well-defined
community of interest in the litigation and the proposed Class is easily ascertainable.

96.     **Numerosity:** Based upon Defendant's publicly available sales data with respect
to Nature's Recipe products, it is estimated that the Class numbers are potentially in the millions,
and the joinder of all Class members is impracticable.

97.     **Common Questions Predominate:** This action involves common questions of
law and fact applicable to each Class member that predominate over questions that affect only
individual Class members. Thus, proof of a common set of facts will establish the right of each
Class member to recover. Questions of law and fact common to each Class member include, for
example:

a.     Whether Defendant engaged in unfair, unlawful or deceptive business practices
by failing to properly package and label Nature's Recipe products sold to
consumers;

b.     Whether the food products at issue were misbranded or unlawfully packaged and
labeled as a matter of law;

c.     Whether Defendant made unlawful and misleading claims regarding the "all
natural" characteristic of the Nature's Recipe products;

d.     Whether Defendant violated Florida's Consumer Protection Statues §§501.201-
501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False

29

Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty

Pursuant to Fla. Stat. §672.313 (2014); Breach of Implied Warranties for

Merchantability and Usage of Trade Pursuant to Fla. Stat. §672.314 (2014), was

Negligent, or was Unjustly Enriched.

e.      Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

f.      Whether Defendant's unlawful, unfair and/or deceptive practices harmed

Plaintiffs and the Class;

g.      Whether Defendant acted negligently by its deceptive practices;

h.      Whether Defendant was unjustly enriched by its deceptive practices.

98.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class because

Plaintiffs purchased Defendant's products during the Class Period. Defendant's unlawful, unfair,

and fraudulent actions concern the same business practices described herein, irrespective of

where they occurred or were experienced. The injuries of each member of the Class were caused

directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's

misconduct is common to all Class members and represents a common thread of misconduct

resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices

and course of conduct that give rise to the claims of the Class members and are based on the

same legal theories.

99.     **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class.

Neither Plaintiffs nor their counsel have any interests that conflict with or are antagonistic to the

interests of the Class members. Plaintiffs have retained highly competent and experienced class

action attorneys to represent their interests and those of the members of the Class. Plaintiffs and

their counsel have the necessary resources to adequately and vigorously litigate this class action,

and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharged those duties by vigorously seeking the maximum possible recovery for the Class.

100.    **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

101.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

102.    The prerequisites to maintaining a class action pursuant to Fed R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions

affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

103.    Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

104.    Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are typical of the Class members' claims. Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiff's claims are typical and representative of the Class.

105.    There are no unique defenses that may be asserted against Plaintiffs individually, as distinguished from the Class. The claims of Plaintiffs are the same as those of the Class.

106.    This class action is superior to any other method for the fair and efficient adjudication of this dispute.

## CAUSES OF ACTION
### COUNT I

**VIOLATION OF FLORIDA CONSUMER PROTECTION STATUTES §501.201- §501.213, FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

107.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 106 above as if fully set forth herein.

108.    Defendant's conduct constitutes unlawful, unfair and deceptive business acts and trade practices.

109.    Defendant sold the Nature's Recipe products in Florida during the Class Period.

110.    Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. For the

reasons discussed above, Defendant has engaged in unfair, false, deceptive, untrue and

misleading advertising in violation of Fla. Stat. §§501.201-501.213 (2014).

111.    The Florida Deceptive and Unfair Trade Practices Act also prohibits any, "unfair

methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

practices in conduct of any trade or commerce." Defendant has violated Fla. Sat. §501.204's

prohibition against engaging in unlawful acts and practices by, *inter alia,* making the false and

deceptive representations, and also through its omissions of material facts, as set forth more fully

herein, and violating 21 U.S.C. §342, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45 (a)(I),

49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A), and the

common law.

112.    Plaintiffs and the Class reserve the right to allege other violations of law which

constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

113.    Defendant's acts, omissions, misrepresentations, practices and non-disclosures as

alleged herein also constitute "unfair" business acts and practices within the meaning of The

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014), in that

its conduct is substantially injurious to consumers, offends public policy, and is immoral,

unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged

benefits attributed to such conduct.

114.    As stated in this Complaint, Plaintiffs allege violations of consumer protection,

unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers.

Defendant's conduct constitutes violations of the public policies against engaging in false and

misleading advertising, unfair competition and deceptive conduct towards consumers as

proscribed by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014).

115.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

116.    Defendant's claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and likely to deceive the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

117.    Defendant's deceptive conduct constitutes a prohibited practice, which directly and proximately caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs and Class members have suffered injury in fact, actual damages, and have lost money as a result of Defendant's unlawful, unfair and fraudulent conduct.  Plaintiffs' damages are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.  Defendant's deceptively labeled, and falsely advertised, and misbranded products have little to no market value.

118.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

119.    Plaintiffs, on behalf of themselves, and all others similarly situated, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competitions, an injunction prohibiting Defendant from containing such practices, corrective advertising, including providing notification of the product's health risks, and all other relief this Court deems appropriate, consistent with Florida Deceptive and Unfair Trade Practices Act.

## COUNT II

### VIOLATION OF FLORIDA INTENTIONAL
### FALSE ADVERTISING STATUTE §817.44

120.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 106 above as if fully set forth herein.

121.    Defendant knowingly and intentionally engaged in false advertising concerning the true characteristics of the ingredient contents of the Nature's Recipe products. Defendant's conduct was consumer-oriented and this conduct had a broad impact on consumers at large.

122.    Defendant's actions were unlawful and under the circumstances, Defendant had actual knowledge of the falsity, or at the very least ought to have known of the falsity thereof.

123.    Fla. Stat. § 817.44 (2014) defines "false advertising," as, "invitations for offers for the sale of any property, real or personal, tangible or intangible, or any services, professional or otherwise, by placing or causing to be placed before the general public, by any means whatever, an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised."

124.    Defendant intentionally, and falsely advertised the Nature's Recipe products in Florida and throughout the United States.

125.    Affirmative false statements on Defendant's product labels and website include, but are not limited to the following:

- We use nature's best.  Our dog food recipes are crafted to help provide specific nutritional or functional benefits, **and they contain no artificial colors or preservatives.**" [22]

- "**All Natural**" [23]

---

[22] http://www.naturesrecipe.com/benefits-and-ingredients/
[23] *Id.*

- "Our **natural** recipe with added vitamins, minerals, and nutrients starts with real USA raised chicken as our #1 ingredient, and then adds a mouthwatering mix of garden quality vegetables and fresh picked fruits. Give your dog grain free goodness you can see, and nourish them with recipe combinations inspired by the best bounty from **nature**" (emphasis added). [24]

- "When **nature** gives us the best, pure essentials does the rest." [25]

126.    As fully alleged above, by intentionally and knowingly advertising, marketing, distributing and selling the mislabeled Nature's Recipe products to Plaintiffs and other members of the Class who purchased the products in Florida, Defendant engaged in, and continues to engage in, false advertising in violation of Fla. Stat. § 817.44 (2014).

127.    Defendant's misleading marketing, advertising, packaging and labeling of the Nature's Recipe products were likely to deceive reasonable consumers.

128.    Plaintiff and other members of the Class who purchased the Nature's Recipe products in Florida were deceived.

129.    Absent such injunctive relief, Defendant will continue to falsely and illegally advertise the Nature's Recipe products to the detriment of consumers in the state of Florida.

130.    As a direct and proximate cause of Defendant's violation of Fla. Stat. § 817.44 (2014), Plaintiffs and the members of the Class who purchased the Nature's Recipe products in Florida were injured when they paid good money for these illegal and worthless products.

131.    As a result of Defendant's unlawful false advertising practices, Plaintiffs and the members of the Class who purchased the Nature's Recipe products in Florida, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to Plaintiffs and the members of

---

[24] http://naturesrecipe.com/pure-essentials/dry-dog-food/grain-free-adult-chicken-and-sweet-potato-recipe/
[25] http://www.naturesrecipe.com/

the Class any money paid for the Nature's Recipe products pursuant to Fla. Stat. § 817.44 (2014).

132.    Plaintiffs and the members of the Class are also entitled to attorneys' fees.

## COUNT III

## BREACH OF EXPRESS WARRANTY PRUSUANT TO § 672.313 FLORIDA STATUTES AND UNIFORM COMMERICAL CODE §2-313

133.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 106 above as if fully set forth herein.

134.    Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased the Nature's Recipe products. The terms of that contract included express promises and affirmations of fact made by Defendant on the Nature's Recipe products' packaging and through its marketing campaign, as described above. The Nature's Recipe products' packaging and advertising constitute express warranties and became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one end, and Defendant on the other.

135.    The Uniform Commercial Code §2-313 provides that express warranties by the seller are created when any affirmation of fact or promise is made by the seller to the buyer which relates to the goods, and thus becomes part of the basis of the bargain, creates an express warranty that the goods shall conform to the affirmation or promise.  In addition, any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

136.    Florida has codified and adopted the provisions the Uniform Commercial Code governing express warranties.  *See* Fla. Stat. §672.313 (2014).

137.     Nature's Recipe products are "goods" as defined in the various states' commercial codes governing express warranties, including Florida.  At all times, and as detailed above, Defendant expressly warranted that its products were "natural."

138.     At the time of making these and other warranties with respect to the characteristics of Nature's Recipe products, Defendant knew or should have known that it had breached the terms of the contract, including the express warranties with Plaintiffs and the Class, by providing the Nature's Recipe products named  "Nature's Recipe Pure Essentials Grain Free Large Breed Chicken & Sweet Potato Recipe," "Nature's Recipe Pure Essentials Grain Free Small Breed Chicken & Sweet Potato Recipe," "Nature's Recipe Pure Essentials Grain Free Senior Chicken & Sweet Potato," and "Nature's Recipe Pure Essentials Grain Free Adult Chicken & Sweet Potato" contained the synthetic and/or artificial chemical ingredients.

139.     Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant, and upon said express warranties, when purchasing Nature's Recipe products.

140.     Plaintiffs and the Class purchased Nature's Recipe products without knowledge that these products contained synthetic and/or artificial chemical ingredients.

141.     Due to Defendant's wrongful conduct as alleged herein, Plaintiffs and the Class could not have known about the true content of the Nature's Recipe products.

142.     As a direct and proximate result of Defendant's breach of its contract, including the breach of express warranties with respect to the Nature's Recipe products, Plaintiffs suffered injuries as set forth above, entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for the Nature's Recipe products and

disgorgement of profits from Defendant received from sales of their products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

143.     All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiffs and the Class.

## COUNT IV

### BREACH OF IMPLIED WARRANTY: MERCHANTABILITY; USAGE OF TRADE PRUSUANT TO § 672.314 FLORIDA STATUTES AND UNIFORM COMMERICAL CODE §2-314

144.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 106 above as if fully set forth herein.

145.     The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

146.     Florida has codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability. Fla. Stat. §672.314 (2014).

147.     Nature's Recipe products are "goods" as defined in the various states' commercial codes governing the implied warranty of merchantability, including Florida.

148.     As designers, manufacturers, licensors, producers, marketers, and sellers of Nature's Recipe products, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability, including Florida.

149.     By placing the Nature's Recipe products in the stream of commerce, Defendant impliedly warranted that the products are reasonably safe and that all claims on their packaging were true, i.e. "Natural."

150.     As merchants of the Nature's Recipe products, Defendant knew that purchasers relied upon them to design, manufacture, license and sell products that were reasonably safe and not deceptively marketed, and in fact members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant and upon said implied warranties in purchasing and consuming the Nature's Recipe products.

151.     Plaintiffs and the Class members purchased the Nature's Recipe products for their intended purpose.

152.     Nature's Recipe products' defects were not open or obvious to consumers, including Plaintiffs and the Class, who could not have known about the true nature and contents of the Nature's Recipe products.

153.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased the Nature's Recipe products. The terms of that contract included implied promises and affirmations of fact made by Defendant on the Nature's Recipe products' packaging and through its marketing campaign, as described above. The Nature's Recipe products' packaging and advertising constitute implied warranties, became parts of the basis of the bargain, and are parts of a standardized contract between Plaintiffs and the members of the Class on the one end, and Defendant on the other.

154.     At all times, and as detailed above, Defendant impliedly warranted that its products were safe, effective and fit for use by consumers, including Plaintiffs and the Class, for their intended use, that they were of merchantable quality, and that they did not produce dangerous side effects.

155.     At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Nature's Recipe products, Defendant knew or should have

known that it had breached the terms of the contract, including the implied warranties with Plaintiffs and the Class, by providing the Nature's Recipe products named "Nature's Recipe Pure Essentials Grain Free Large Breed Chicken & Sweet Potato Recipe," "Nature's Recipe Pure Essentials Grain Free Small Breed Chicken & Sweet Potato Recipe," "Nature's Recipe Pure Essentials Grain Free Senior Chicken & Sweet Potato," and "Nature's Recipe Pure Essentials Grain Free Adult Chicken & Sweet Potato" contained the synthetic and/or artificial chemical ingredients.

156.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant, and upon said implied warranties, when purchasing Nature's Recipe products.

157.    Plaintiffs and the Class purchased Nature's Recipe products without knowledge that these products contained synthetic and/or artificial chemical ingredients.

158.    Due to Defendant's wrongful conduct as alleged herein, Plaintiffs and the Class could not have known about the true content of the Nature's Recipe products.

159.    As a direct and proximate result of Defendant's breach of implied warranties and breach of merchantability, Plaintiffs and Class members have sustained injuries by purchasing the Nature's Recipe products, which were not as represented, thus entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for the Nature's Recipe products and disgorgement of profits from Defendant received from sales of the products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

160.    All conditions precedent to Defendant's liability under this contract, including notice, has been performed by Plaintiffs and the Class.

## COUNT V

## NEGLIGENCE

161.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 106 above as if fully set forth herein.

162.    Defendant had a duty to represent its products accurately.  Defendant breached that duty by purposefully or negligently making misrepresentations of fact and omissions of material fact to Plaintiffs and the other Class members about the Nature's Recipe products.

163.    Defendant failed to label or advertise the Nature's Recipe products in a lawful manner and violated duties owed to consumers by purposefully or negligently engaging in the conduct described herein.

164.    Plaintiffs and the other Class members, as a direct and proximate cause of Defendant's breach of its duties, were damaged by receiving worthless products, or at the very least, misbranded deceptively labeled products.

165.    As described above, Defendant's actions violated a number of express statutory provisions designed to protect Plaintiffs and the Class.

166.    Defendant's illegal actions constitute negligence *per se*.

167.    Moreover, the statutory food labeling and misbranding provisions violated by Defendant are strict liability provisions.

168.    By reason of the foregoing, Plaintiffs and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

## COUNT VI

## UNJUST ENRICHMENT

169.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 106 above as if fully set forth herein.

170.    As a result of Defendant's fraudulent and misleading labeling, advertising, marketing, and sales of the Nature's Recipe products, Defendant was enriched at the expense of Plaintiffs and the Class.

171.    Defendant sold the Nature's Recipe products, which was a product that was illegally sold, illegally branded and had no economic value, to Plaintiffs and the Class.

172.    It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class in light of the fact that the products were not what Defendant purported them to be.

173.    Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendant for the Nature's Recipe products at issue.

174.    As a direct and proximate result of Defendant's actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all other similarly situated persons, pray for judgment against Defendant as follows:

A.    For an order certifying this case as a Class Action and appointing Plaintiffs and their counsel to represent the Class;

B.    That the Court adjudges and decrees that Defendant has engaged in the conduct alleged herein;

C.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

D.      Ordering Defendant to engage in a corrective advertising campaign;

E.      Awarding Plaintiffs and the proposed Class members damages;

F.      Awarding restitution and disgorgement to Plaintiffs and the other Class members;

G.      Awarding Plaintiffs and the Classes punitive damages;

H.      Awarding Plaintiffs treble damages;

I.      Awarding attorneys' fees and costs; and

J.      Providing such further relief as may be just and proper.

Dated: February 2, 2015

Respectfully submitted,


By: */s/ Tim Howard*
Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**HOWARD & ASSOCIATES, P.A.**
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com